☑ Original          ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of | ) |
| *(Briefly describe the property to be searched* | ) |
| *or identify the person by name and address)* | )   Case No.   21-1049M(NJ) |
| Information associated with the Google | ) |
| Account keykeytoles@gmail.com that is stored | ) |
| at premises controlled by Google LLC | ) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:      Any authorized law enforcement officer

     An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ Northern _____ District of _____ California _____
*(identify the person or describe the property to be searched and give its location):*

  See Attachment A.

     I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

  See Attachment B.

     **YOU ARE COMMANDED** to execute this warrant on or before _____ 1/6/2022 _____ *(not to exceed 14 days)*
☐ in the daytime 6:00 a.m. to 10:00 p.m.  ☑ at any time in the day or night because good cause has been established.

     Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

     The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Hon. Nancy Joseph _____ .
                                                *(United States Magistrate Judge)*

     ☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*  ☐ until, the facts justifying, the later specific date of _____ .

Date and time issued:   12/23/2021 @ 10:39 a.m.          *Judge's signature*

City and state:          Milwaukee, WI                    Hon. Nancy Joseph, U.S. Magistrate Judge
                                                          *Printed name and title*

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

| **Certification** |
|---|

I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **keykeytoles@gmail.com** ("the Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

## ATTACHMENT B

### Particular Things to be Seized

**I.      Information to be disclosed by Google LLC ("Google")**

       To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from May 15, 2021 (CST) – September 25, 2021 (CST), unless otherwise indicated:

      a.     All business records and subscriber information, in any form kept, pertaining to the Account, including:

           1.    Names (including subscriber names, user names, and screen names);

           2.    Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

           3.    Telephone numbers, including SMS recovery and alternate sign-in numbers;

           4.    Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

           5.    Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers;

           6.    Length of service (including start date and creation IP) and types of service utilized;

           7.    Means and source of payment (including any credit card or bank account number); and

           8.    Change history.

b.	All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.	Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.	All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history; and

e.	All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.


Google is hereby ordered to disclose the above information to the government within **14** days of issuance of this warrant.

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched<br>or identify the person by name and address)*<br><br>Information associated with the Google Account<br>keykeytoles@gmail.com that is stored at premises<br>controlled by Google LLC | )<br>)<br>)<br>)  Case No.  21-1049M(NJ)<br>)<br>)<br>) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A.

located in the _____Northern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC, Section 844(i) | Arson of a commercial property. |

The application is based on these facts:

See attached Affidavit.

☐ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Luke Barker, ATF Special Agent
_____
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date:  12/23/2021

City and state:  Milwaukee, WI

LUKE BARKER
Digitally signed by LUKE BARKER
Date: 2021.12.23 10:02:43 -06'00'
_____
*Judge's signature*

Hon. Nancy Joseph, U.S. Magistrate Judge
_____
*Printed name and title*

# AFFIDAVIT IN SUPPORT OF
# AN APPLICATION FOR A SEARCH WARRANT

I, Luke Barker, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1.      I make this affidavit in support of an application for a search warrant for information associated with a certain account, **keykeytoles@gmail.com**, that is stored at premises owned, maintained, controlled, or operated by Google LLC ("Google"), an electronic communications service and/or remote computing service provider headquartered at 1600 Amphitheater Parkway, Mountain View, California.  The information to be searched is described in the following paragraphs and in Attachment A.  This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A), and 2703(c)(1)(A) to require Google to disclose to the government copies of the information (including the content of communications) further described in Section I of Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review that information to locate the items described in Section II of Attachment B.

2.      I am a Special Agent of the U.S. Department of Justice's Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), currently assigned to the Milwaukee Field Office. I have been so employed since November 2015. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

3.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia. I have also completed training at the ATF National Academy. That training included various legal courses related to constitutional law, search and seizure authority, and specific training on explosives and arson investigations.

Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection. As a Special Agent with the ATF, I have responded to numerous fire scenes and been involved in multiple arson investigations. I have also received additional fire investigation training, including training at the Wisconsin International Association of Arson Investigators' 2019 annual conference. Before joining the ATF, I served for nearly eight years as a police officer with the Aurora Police Department in Aurora, Colorado.

4. Through my experience and training as a firearm and arson investigator, I am aware that electronic devices, such as cellphones, are used to store and save audio, video, and text files that can link to a variety of criminal activity. These electronic devices often contain evidence about the custody and control of those devices, along with location information about the device's whereabouts at the time of the crime. During the course of my investigations, I have regularly used electronic evidence relating to the commission of criminal offenses, including intent, motive, manner, means, and the identity of co-conspirators.

5. I am an investigative or law enforcement officer of the United States within the meaning of Section 2510(7) of Title 18, United States Code, in that I am empowered by law to conduct investigations of and to make arrests for federal offenses.

6. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and information provided to me by other federal, state, and local law

enforcement officers. This affidavit is intended to show merely that there is sufficient probable

cause for the requested warrant and does not set forth all of my knowledge about this matter.

7.      Based on my training and experience and the facts as set forth in this affidavit,

there is probable cause to believe that violations of Title 18, United State Code, Section 844(i),

arson of a commercial property, has been committed by Christopher Gilmore.  There is also

probable cause to search the information described in Attachment A for evidence of these

crimes, as described in Attachment B.

## JURISDICTION

8.      This Court has jurisdiction to issue the requested warrant because it is "a court of

competent jurisdiction" as defined by 18 U.S.C. § 2711.  18 U.S.C. §§ 2703(a), (b)(1)(A), &

(c)(1)(A).  Specifically, the Court is "a district court of the United States . . . that has jurisdiction

over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

## PROBABLE CAUSE

### May 18, 2021, Fire

9.      On May 18, 2021, at approximately 5:22 a.m., the Milwaukee Fire Department

(MFD) and Milwaukee Police Department (MPD) were dispatched to 2626 N. 37th Street,

Milwaukee, Wisconsin, on a report of a fire. Upon their arrival a fire was located and

ultimately extinguished. The majority of the damage sustained by the fire was on the exterior

of the southeast corner of the residence (*see Figure 1*). The residence is a two-story, multi-unit

rental property.

3



*Figure 1*

10.    MPD located and interviewed two tenants of the residence. The tenant of the upper unit was identified as B.B., and the tenant of the lower unit was identified as S.H.

11.    In an interview with B.B., MPD learned that at approximately 5:20 a.m., one of the windows in B.B.'s residence shattered. B.B. went to see what had happened and observed a male, whom he identified as Christopher Gilmore, running away from the residence northbound through the alley. Gilmore was later identified as Christopher Gilmore (DOB: xx/xx/1983). B.B. informed MPD that shortly after this, he smelled something burning and discovered the back of the property was on fire.

12.    An MPD detective was assigned to investigate the fire. After examining the scene of the fire and conducting interviews of witnesses, the detective classified the fire as incendiary.

13.    On June 14, 2021, ATF Special Agents interviewed B.B. B.B. said in May of 2021 he met a male named A.L. through an on-line dating app. During their first few conversations, A.L. informed B.B. that he recently broke up with another male named Christopher Gilmore.

4

14.     B.B. informed ATF agents that a few days after meeting A.L., B.B. was contacted by Gilmore via phone. B.B. said Gilmore had used a phone that belonged to A.L. B.B. said Gilmore appeared to be angry with B.B. for speaking with A.L. and threatened to "set his house on fire." B.B. added that the next day, May 16, 2021, Gilmore made contact with B.B. in person outside of B.B.'s residence. B.B. said Gilmore identified himself as the person who had contacted him the day before. ATF agents showed a drivers' license photograph of Gilmore to B.B. B.B. identified the person as Gilmore.

15.     B.B. informed ATF agents that at approximately 5:00 a.m. on May 18, 2021, he was asleep in his bedroom when he was woken by the sound of a window breaking. B.B. said he looked out of the window and observed a male running northbound towards the alley. B.B. said the male was tall with a slim build, wearing black pants and a black hoodie. B.B. said the body type matched that of Gilmore. B.B. stated a few minutes later he was in his kitchen and smelled something burning and then discovered the fire to the east side of the residence.

**June 1, 2021, Fire**

16.     On June 1, 2021, at approximately 4:34 a.m., members of the MPD were dispatched to 3826 W. Meinecke Avenue, Milwaukee, Wisconsin, on a call of a vehicle fire. The target vehicle was a red in color 2003 Buick Lesabre. The vehicle sustained major fire damage (*see Figure 2).*

5



*Figure 2*

17.     MPD identified the registered owner of the Buick to be T.W. MPD discovered T.W. was in a romantic relationship with A.L. A.L. was previously in a relationship with Gilmore.

18.     MPD discovered an exterior video surveillance camera located at 3823 W. Meinecke Ave. MPD reviewed the surveillance footage and observed a person approach the Buick from the east, light an object on fire and throw the object into the passenger side of the Buick.

19.     An MPD detective was assigned to investigate the fire. After examining the scene of the fire, conducting interviews of witnesses and observing the available video surveillance, the detective classified the fire as incendiary.

**September 23, 2021, Fire**

20.     On September 23, 2021, at approximately 10:37 p.m., MPD was dispatched to an additional fire at 3826 W. Meinecke Avenue, Milwaukee, Wisconsin. MPD personnel met with members of MFD who had already extinguished a fire that was on the porch on the east side of the residence. 3826 W. Meinecke Ave is a two story, multi-unit rental property.

6

21.     An MPD detective was assigned to investigate the fire. After examining the scene of the fire and conducting interviews of witnesses, the detective classified the fire as incendiary.

22.     On September 24, 2021, the MPD detective conducted follow up and attempted to contact Gilmore at 3821 W. Walnut Street. This address is the residence of Gilmore's sister, C.G. The detective was unable to make contact with Gilmore at that address but did ask C.G. for Gilmore's phone number. C.G. informed the detective that Gilmore's phone number is 414-386-3343. The detective than observed C.G. dial the number she provided for Gilmore in an attempt to contact him.

23.     On October 5, 2012, ATF agents conducted an interview with T.W., one of the tenants in the lower unit of 3826 W. Meinecke Avenue. T.W. stated that on the night of September 23, 2021, he and his roommate A.L., were inside the residence at 3826 W. Meinecke. T.W. stated he observed a flash of light coming from outside of his bedroom window. He stated he looked outside of the window and observed Gilmore lighting a small amount of garbage outside of the bedroom window (*see Figure 3*).



*Figure 3*

24.     T.W. informed ATF agents he exited the residence to confront Gilmore. Upon

exiting the residence, he observed Gilmore running eastbound away from the residence. T.W.

also stated he observed his porch was on fire when he exited his residence.

25.     On October 6, 2021, ATF agents conducted an interview with A.L., a

roommate of T.W. and one of the tenants in the lower unit of 3826 W. Meinecke Avenue.

A.L. informed ATF agents he and T.W. were in a bedroom in their residence on the night of

the fire. A.L. stated T.W. observed a flash of light coming from outside the bedroom window.

A.L. stated both he and T.W. looked outside the window, and both saw Gilmore attempting to

light a fire. A.L. stated he and T.W. exited the residence. A.L. stated T.W. exited the residence

before him and observed Gilmore running away. However, A.L. stated by the time he exited

the residence he did not do so in time to see Gilmore. A.L. stated he observed the porch was

on fire when he exited the residence. The fire damaged the northern section of the porch (*see

Figure 4*).



*Figure 4*

8

26.     During the interview, A.L. provided ATF agents a phone number for Gilmore. The phone number he provided was 414-386-3343.

27.     Since the interview with A.L., A.L. has contacted your affiant and stated that he is recanting his earlier statement that he saw Gilmore lighting a fire at 3826 W. Meinecke Avenue on September 23, 2021.

28.     According to a law enforcement database, phone number 414-386-3343 was a customer of phone service provider Text Now, Inc. According to subscriber information for 414-386-3343 from Text Now, Inc., phone number 414-386-3343 was registered on June 28, 2021, to a "Ijiah Gilmore" with the username "ijiahgilmore." The email address associated with this user was **keykeytoles@gmail.com**. According to a law enforcement database, Gilmore has a few known email addresses, one of which was ijiahgilmoresafforld1982@gmail.com.

29.     Based upon my training, experience, and familiarity with this investigation, I believe that the requested records are likely to constitute evidence of the crimes under investigation because the location data for a cellular device using a google account listed to **keykeytoles@gmail.com**, believed to belong to Gilmore, is likely to place the user of a cellular device using a google account **keykeytoles@gmail.com** at and/or near the various crime scene locations at and around the time each arson was committed. It may further identify the Google account user's locations at various other relevant time periods, thus aiding in identifying the target's whereabouts, and thus identity, as well as possible witnesses.

9

## **BACKGROUND CONCERNING GOOGLE**[1]

30.     Google is a United States company that offers to the public through its Google Accounts a variety of online services, including email, cloud storage, digital payments, and productivity applications, which can be accessed through a web browser or mobile applications. Google also offers to anyone, whether or not they have a Google Account, a free web browser called Google Chrome, a free search engine called Google Search, a free video streaming site called YouTube, a free mapping service called Google Maps, and a free traffic tracking service called Waze. Many of these free services offer additional functionality if the user signs into their Google Account.

31.     In addition, Google offers an operating system ("OS") for mobile devices, including cellular phones, known as Android. Google also sells devices, including laptops, mobile phones, tablets, smart speakers, security cameras, and wireless routers. Users of Android and Google devices are prompted to connect their device to a Google Account when they first turn on the device, and a Google Account is required for certain functionalities on these devices.

32.     Signing up for a Google Account automatically generates an email address at the domain gmail.com. That email address will be the log-in username for access to the Google Account.

33.     Google advertises its services as "One Account. All of Google working for you." Once logged into a Google Account, a user can connect to Google's full suite of services offered

---

[1]     The information in this section is based on information published by Google on its public websites, including, but not limited to, the following webpages:  the "Google legal policy and products" page available to registered law enforcement at lers.google.com; product pages on support.google.com; or product pages on about.google.com.

to the general public, described in further detail below. In addition, Google keeps certain records indicating ownership and usage of the Google Account across services, described further after the description of services below.

34.    Google collects and retains data about the location at which Google Account services are accessed from any mobile device, as well as the periodic location of Android devices while they are in use. This location data can derive from a range of sources, including GPS data, Wi-Fi access points, cell-site locations, geolocation of IP addresses, sensor data, user searches, and Bluetooth beacons within range of the device. According to Google, this location data may be associated with the Google Account signed-in or registered to the device when Location Services are activated on the device and the user has enabled certain global settings for their Google Account, such as Location History or Web & App Activity tracking. The data retained may be both precision location data, like latitude and longitude coordinates derived from GPS, and inferential location data, such as the inference that a Google Account is in New York because it conducts a series of searches about places to eat in New York and directions from one New York location to another. Precision location data is typically stored by Google in an account's Location History and is assigned a latitude-longitude coordinate with a meter radius margin of error. Inferential data is stored with an account's Web & App Activity.

35.    Google offers a map service called Google Maps which can be searched for addresses or points of interest. Google Maps can provide users with turn-by-turn directions from one location to another using a range of transportation options (driving, biking, walking, etc.) and real-time traffic updates. Users can share their real-time location with others through Google Maps by using the Location Sharing feature. And users can find and plan an itinerary using

11

Google Trips. A Google Account is not required to use Google Maps, but if users log into their Google Account while using Google Maps, they can save locations to their account, keep a history of their Google Maps searches, and create personalized maps using Google My Maps.

36. Location data, such as the location data in the possession of Google in the form of its users' Location Histories, can assist in a criminal investigation in various ways. As relevant here, I know based on my training and experience that Google has the ability to determine, based on location data collected and retained via the use of Google products as described above, devices that were likely in a particular geographic area during a particular time frame and to determine which Google account(s) those devices are associated with. Among other things, this information can indicate that a Google account holder was near a given location at a time relevant to the criminal investigation by showing that his/her device reported being there.

37. When individuals register with Google for a Google Account, Google asks users to provide certain personal identifying information, including the user's full name, telephone number, birthday, and gender. If a user is paying for services, the user must also provide a physical address and means and source of payment.

38. Google typically retains and can provide certain transactional information about the creation and use of each account on its system. Google captures the date on which the account was created, the length of service, log-in times and durations, the types of services utilized by the Google Account, the status of the account (including whether the account is inactive or closed), the methods used to connect to the account (such as logging into the account via Google's website or using a mobile application), details about the devices used to access the account, and other log files that reflect usage of the account. In addition, Google keeps records of

12

the Internet Protocol ("IP") addresses used to register the account and accept Google's terms of service, as well as the IP addresses associated with particular logins to the account. Because every device that connects to the Internet must use an IP address, IP address information can help to identify which computers or other devices were used to access the Google Account.

39.     Google maintains the communications, files, and associated records for each service used by a Google Account on servers under its control. Even after a user deletes a communication or file from their Google Account, it may continue to be available on Google's servers for a certain period of time.

40.     In my training and experience, evidence of who was using a Google account and from where, and evidence related to criminal activity of the kind described above, may be found in the files and records described above.  This evidence may establish the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or, alternatively, to exclude the innocent from further suspicion.

41.     Based on my training and experience, messages, emails, voicemails, photos, videos, documents, and internet searches are often created and used in furtherance of criminal activity, including to communicate and facilitate the offenses under investigation.  Thus, stored communications and files connected to a Google Account may provide direct evidence of the offenses under investigation.

42.     In addition, the user's account activity, logs, stored electronic communications, and other data retained by Google can indicate who has used or controlled the account.  This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing

a search warrant at a residence. For example, subscriber information, email and messaging logs, documents, and photos and videos and the data associated with the foregoing, such as geo-location, date, and time, may be evidence of who used or controlled the account at a relevant time. As an example, because every device has unique hardware and software identifiers, and because every device that connects to the Internet must use an IP address, IP address and device identifier information can help to identify which computers or other devices were used to access the account. Such information also allows investigators to understand the geographic and chronological context of access, use, and events relating to the crime under investigation.

43. Account activity may also provide relevant insight into the account owner's state of mind as it relates to the offenses under investigation. For example, information on the account may indicate the owner's motive and intent to commit a crime (*e.g.,* information indicating a plan to commit a crime), or consciousness of guilt (*e.g.,* deleting account information in an effort to conceal evidence from law enforcement).

44. Other information connected to the use of a Google account may lead to the discovery of additional evidence. For example, the apps downloaded from the Google Play store may reveal services used in furtherance of the crimes under investigation or services used to communicate with co-conspirators.

45. Therefore, Google's servers are likely to contain stored location history, map information, and information concerning subscribers and their use of Google services. In my training and experience, such information may constitute evidence of the crimes under investigation including information that can be used to identify the account's user or users.

## **CONCLUSION**

46.     Based on the forgoing, I request that the Court issue the proposed search warrant.

47.     Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.  The government will execute this warrant by serving the warrant on Google.  Because the warrant will be served on Google, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

Case 2:21-mj-01049-NJ   Filed 12/23/21   Page 21 of 25   Document 1

## ATTACHMENT A

### Property to Be Searched

This warrant applies to information associated with **keykeytoles@gmail.com** ("the Account") that is stored at premises owned, maintained, controlled, or operated by Google LLC, a company headquartered at 1600 Amphitheatre Parkway, Mountain View, CA 94043.

<u>**ATTACHMENT B**</u>

**Particular Things to be Seized**

**I.      Information to be disclosed by Google LLC ("Google")**

To the extent that the information described in Attachment A is within the possession, custody, or control of Google, regardless of whether such information is located within or outside of the United States, and including any emails, records, files, logs, or information that has been deleted but is still available to Google, Google is required to disclose to the government for each account or identifier listed in Attachment A the following information from May 15, 2021 (CST) – September 25, 2021 (CST), unless otherwise indicated:

a.      All business records and subscriber information, in any form kept, pertaining to the Account, including:

1.      Names (including subscriber names, user names, and screen names);

2.      Addresses (including mailing addresses, residential addresses, business addresses, and email addresses, including alternate and recovery email addresses);

3.      Telephone numbers, including SMS recovery and alternate sign-in numbers;

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions, including log-in IP addresses;

5.      Telephone or instrument numbers or other subscriber numbers or identities, including any temporarily assigned network address, SMS recovery numbers, Google Voice numbers, and alternate sign-in numbers;

6.      Length of service (including start date and creation IP) and types of service utilized;

7.      Means and source of payment (including any credit card or bank account number); and

8.      Change history.

b.  All device information associated with the Account, including but not limited to, manufacture names, model numbers, serial number, media access control (MAC) addresses, international mobile equipment identifier (IMEI) numbers, FCC ID numbers, Android IDs, and telephone numbers;

c.  Records of user activity for each connection made to or from the Account(s), including, for all Google services, the date, time, length, and method of connection, data transfer volume, user names, source and destination IP address, name of accessed Google service, and all activity logs;

d.  All Location History and Web & App Activity indicating the location at which the account was active, including the source of the data, date and time, latitude and longitude, estimated accuracy, device and platform, inferences drawn from sensor data (such as whether a user was at rest, walking, biking, or in a car), and associated logs and user settings, including Timeline access logs and change and deletion history; and

e.  All maps data associated with the account, including Google Maps and Google Trips, including: all saved, starred, and privately labeled locations; search history; routes begun; routes completed; mode of transit used for directions; My Maps data; accounts and identifiers receiving or sending Location Sharing information to the account; changes and edits to public places; and all associated logs, including IP addresses, location data, and timestamps, and change history.

Google is hereby ordered to disclose the above information to the government within **14** days of issuance of this warrant.

2

**II.    Information to be seized by the government**

All information described above in Section I that constitutes evidence of violations of

Title 18, United State Code, Section 844(i), arson of a commercial property, those violations

involving Christopher Gilmore, including, for each Account or identifier listed on Attachment A,

information pertaining to the following matters:

    a.) Arson, and preparatory steps taken in furtherance of the commission of arson;

    b.) Evidence indicating how and when the Account was accessed or used, to determine the geographic and chronological context of account access, use, and events relating to the crime under investigation and to the email account owner;

    c.) Evidence indicating the Account owner's state of mind as it relates to the crime under investigation;

    d.) The identity of the person(s) who created or used the Account, including records that help reveal the whereabouts of such person(s).